**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth P. LaMarr, ) | No. CV-04-0659-PHX-FJM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| American Bankers Life Assurance Co., et ) | |
| al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This court has before it defendants' Motion for Summary Judgment (doc. 47), plaintiff's Response (doc. 54), and defendants' Reply (doc. 58). We also have before us plaintiff's Motion to Strike Opposition to Controverting Statement of Facts and Affidavit of Susan Roe (doc. 61), defendants' Response (doc. 63), and plaintiff's Reply (doc. 65). For the reasons set forth below, we deny both motions.

**I**

In May 2001, plaintiff Kenneth LaMarr filled out an enrollment card for life insurance for himself in the amount of $50,000, and for his alleged common law wife, Dedra De Sorrells, in the amount of $100,000, both with an effective date of July 1, 2001. The insurance was offered by defendant American Bankers Life Assurance Company of Florida

1  ("American Bankers") and was administered by defendant Association Group Insurance
2  Administrators, Inc. ("AGIA").

3  Plaintiff signed his name and De Sorrells' name to the enrollment form directly above
4  two provisions certifying (1) that he and Ms. De Sorrells were in good health and that neither
5  had been diagnosed with certain specified medical conditions; and (2) that "[b]y signing this
6  enrollment, I/we acknowledge receipt and understanding of all disclosures accompanying this
7  letter and enrollment." DSOF, Exhibit B.

8  On October 5, 2002, De Sorrells was killed by a self-inflicted gunshot wound. On
9  October 21, 2002, plaintiff informed AGIA of De Sorrells' death and made a claim on the
10 life insurance policy. On January 6, 2003, American Bankers denied plaintiff's claim and
11 informed him–he claims for the first time–that the policy he purchased did not provide for
12 death benefits where death was self-inflicted and occurred within two years of the effective
13 date of the policy. Plaintiff now contends that he was never informed of the suicide
14 exclusion, and therefore this provision cannot serve to exclude coverage.

**II**

16 The central issue presented in this case is whether plaintiff knew of the suicide
17 exclusion such that benefits based on Ms. De Sorrells' suicide are properly denied.[1] On the
18 one hand, plaintiff claims that he never received any information about the policy prior to
19 Ms. De Sorrells' death, that he was unaware of the suicide exclusion, that he reasonably
20 expected that coverage existed, and therefore coverage cannot be denied on this basis.
21 Specifically, plaintiff alleges that he applied for life insurance when he visited a Redding,

---

[1] Defendants alternatively argue that no valid, binding contract was ever formed because Ms. De Sorrells did not personally sign the enrollment card and certify that she was in good health. Defendants fail to cite any authority for the proposition that a person is unable to obtain life insurance for his or her spouse, or to certify that one's spouse is in good health. Further, while defendants raise the issue of whether Ms. De Sorrells was in fact plaintiff's common law wife, there is no analysis of relevant law from which we could decide the issue. These arguments are insufficient to warrant summary judgment in defendants' favor.

1  California branch of Wells Fargo Bank while on a business trip and was verbally solicited
2  for life insurance coverage.  He claims that he was given an enrollment card by a bank
3  employee, which he filled out on behalf of himself and Ms. De Sorrells, but he did not
4  receive any other information about the policy.  He claims that at no time prior to De Sorrells
5  death did he receive any further documentation from AGIA, American Bankers or Wells
6  Fargo explaining the terms or limitations of the policy.

7  Defendants contend, on the other hand, that substantial evidence establishes that
8  plaintiff in fact received coverage and exclusion information on numerous occasions, and
9  therefore plaintiff must have known about the suicide exclusion.  Defendants contend that
10 plaintiff could not have simply walked into a Wells Fargo branch in California and filled out
11 an enrollment form, because the form plaintiff submitted was preprinted with his name and
12 address in Winnemucca, Nevada.  According to defendants, plaintiff's enrollment form must
13 have been received by plaintiff as part of a mass mailing sent to Wells Fargo customers, a
14 mailing which contained a preprinted enrollment form, as well as a two-page summary of the
15 insurance coverage, including an explanation of the suicide exclusion.  Plaintiff does not
16 explain why the enrollment form he submitted contained his preprinted name and address.

17 Defendants also argue that  plaintiff's receipt of coverage information is demonstrated
18 by AGIA's standard practice of sending a certificate of insurance to all insureds upon
19 enrollment.  AGIA's records indicate that this information was sent to plaintiff on June 13,
20 2001, two weeks after enrollment, and again on December 21, 2001, after plaintiff contacted
21 AGIA and advised them of a change of address.  Defendants note that if plaintiff had
22 received no information about the policy other than what was printed on the enrollment form,
23 as plaintiff alleges, he would not have known to contact AGIA to submit change of address
24 information because AGIA is not mentioned anywhere on the enrollment form.  Again,
25 plaintiff does not attempt to refute or explain this conflicting evidence.

26 On a motion for summary judgment under Rule 56, Fed. R. Civ. P., the moving party
27 carries the initial burden of demonstrating the absence of a genuine issue of material fact.
28 Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  When the moving

-3-

1  party has satisfied this initial burden, the burden then shifts to the nonmoving party to
2  establish that a genuine issue of material fact exists. Id. at 324, 106 S. Ct. at 2553-54; Fed.
3  R. Civ. P. 56(e). "In the language of the Rule, the nonmoving party must come forward with
4  specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v.
5  Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (emphasis in original).

6  "Where the nonmoving party in a motion for summary judgment has come forward
7  with direct evidence contrary to that offered by the movant, a credibility issue is raised."
8  Hanon v. Dataproducts Corp., 976 F.2d 497, 507 (9th Cir. 1992); see also McLaughlin v.
9  Liu, 849 F.2d 1205, 1207-08 (9th Cir. 1988). These credibility determinations are for the
10 trier of fact, and therefore may not be resolved by summary judgment. McLaughlin, 849
11 F.2d at 1207 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505,
12 2513 (1986)). Although in reviewing a motion for summary judgment we are entitled to
13 discount unreasonable inferences arising from circumstantial evidence, we must treat direct
14 evidence, including the nonmovant's own sworn testimony, as if it were true. Id. at 1207-08
15 (holding that sworn statements are considered direct evidence of a fact in dispute); Hanon,
16 976 F.2d at 507. "[T]he court may not assess the credibility of [direct] evidence nor weigh
17 against it any conflicting evidence presented by the moving party." McLaughlin, 849 F.2d
18 at 1209.

19 Here, plaintiff's deposition testimony is direct evidence of a central fact in dispute:
20 whether plaintiff received information regarding the policy coverage and exclusions.
21 Although plaintiff's account of the facts relating to enrollment may appear on its face to be
22 unlikely given the unexplained inconsistencies in his testimony, his claims are not thereby
23 rendered altogether implausible. Even if plaintiff used a preprinted enrollment form, it does
24 not necessarily follow that he also received coverage and exclusion information. This
25 remains a disputed issue of material fact. It is for the trier of fact to determine the credibility
26 of plaintiff's testimony. Accordingly, we conclude that plaintiff has raised a genuine issue
27 of material fact which precludes summary judgment.

28                                    **III**

1    Plaintiff filed a motion to strike defendants' opposition to plaintiff's controverting
2 statement of facts and affidavit of Susan Roe as untimely and improper. Based on the
3 foregoing, this motion is rendered moot, and is accordingly denied (doc. 61).

5    **IT IS THEREFORE ORDERED DENYING** defendants' motion for summary
6 judgment (doc. 47). **IT IS FURTHER ORDERED DENYING** plaintiff's motion to strike
7 (doc. 61).
8        DATED this 1st day of May, 2006.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge